Welcome to the eclectic panel of the Fifth Circuit. Judge Graves representing Mississippi, Judge Oldham representing Texas, and I'm holding up my end from Louisiana, so it doesn't always happen, but we've got you. Anywhere you come, we're going to cover the territory. We have two cases this morning for oral arguments. The first would be number 24-40442. We're ready when you're ready. Thank you, Your Honor. I'm Timothy David Craig. I represent the plaintiffs in this appeal. It's an honor to be here this morning to represent the right of a plaintiff's class. I will say this, and I should have said it before. If you will, use your theater voice. The mics are good. If you just, you know, talk a little bit louder, sometimes our sound system doesn't pick it up as well, and a few of the people in the audience want to hear what you have to say. I'll do my best, Your Honor. All right, thank you. It's an honor to be here this morning to represent a class of millions of children on Medicaid in Texas and their right to have access to counsel to advocate for their benefits that they negotiated for in a consent decree and a 2007 corrective action. Do you agree that the rights that are relevant in your 1983 suit are rights that are secured by federal law? Yes, yes, Your Honor. So can you point to me the provision in Title 42 that guarantees, for example, the class member's rights to a toll-free number staffed 24-7 with a 300-minute or shorter average wait time? I don't have those provisions in front of me. Can you represent to the court that such a provision exists? I don't believe that there is a provision of federal law that addresses that specific issue. I do believe that the Supreme Court in the Frueh opinion stated that the consent decree can go beyond what is literally required under the statute as long as it is designed to enforce the rights that are guaranteed. And remind me, was the consent decree in this case signed before or after the Supreme Court's decision? It was before. The Supreme Court opinion was pursuant, it was reviewing a order of the district court finding that the state had not complied with the consent decree and the Supreme Court upheld the district court's order rejecting the state's argument that all that was required was strict complaints with the statute and finding that the consent decree could be more specific and require different things than is required under the statute as long as the consent decree was signed up for that. So help me understand what provision of the consent decree guarantees a 300-minute or shorter average wait, 300-second, excuse me, 300-second or shorter average wait time for a 24-7 staffed 800 toll line? Again, I don't remember the exact paragraphs off the top of my head. There are, there's an entire section of the consent decree that deals with toll-free numbers and says, you know, addresses things like the staff has to be professional, the amount of time. Then once the, it was found that the state had not complied with the consent decree, the state agreed to enter into a corrective action order to try to bring them into compliance with the consent decree that required more specific. And I was confused by that in the record. So obviously the consent decree by its definition is agreed to. And you're right, paragraph 247 says all calls will be answered promptly absent of equipment failure. I suppose it's common ground that that's nowhere in Title 42. And we can get into the sort of meta questions about whether and to what extent you can by consent decree expand your rights under 1983. But what I don't understand is the corrective action orders seem to be adversarial. So are you telling me that the 300-second provision, I'm just using it as an example. We could talk about a different one if you want to. But is the 300-second provision, is that agreed to? All of the corrective action orders were agreed to. So then what is the nature of the litigation that you want your fees for if all of the CAOs are agreed to? Well, there are various categories of fees. The primary area that addresses most of the time that was denied by the court below has to do with denial for our efforts to get a court determination of whether further action was required under a specific part of the corrective action order. This court in Prue v. Traylor found that those efforts are specifically contemplated by the CAO that was in question there. And each of the other 11 parts of the CAO contained the exact same provision that the statewide provision that was at issue in Prue v. Traylor contained. Prue v. Traylor found that we were prevailing parties for the purpose of those efforts, but we manned it to the district court to determine whether there might need to be a reduction of our fee based on reasonableness related to success. Let me ask it differently. What is the state not doing with respect to the toll-free line CAO? If they agree to the consent decree, they agree to the CAO, what are they not doing that you need to make them do using the coercive power of the federal courts and then be paid a million and a half dollars for the effort? At this time, we have agreed in the court to sign an order dissolving the toll-free number. I'm sorry, I couldn't hear. We agreed with defendants to dissolve the toll-free number corrective action order and related decree provisions. So at this time, those provisions are no longer active. So we are not actually asking the court, the defendants at this time to do anything under the toll-free number CAO. But part of your one and a half million dollars, that's why you're briefing it to us. Yes. Is about violations of the 300 second provision or the prompt answering or you have to do it in a courteous voice or it has to be 24-7 or it has to be. So help me understand, what is the nature of the thing that they were doing or not doing that you needed to sue them and get a million and a half dollars of Texas taxpayer money to make the federal court make them do it? At the end of the each corrective action order has a period of time in which the state is supposed to do various things that are intended to correct their failure to comply with the consent decree in the first place. With regard to the toll-free number issue specifically, at the end of the time period related to the toll-free number CAO, plaintiffs and defendants agreed to dissolve that CAO entirely. Immediately before we were going to submit that to the court, defendants notified plaintiffs and the court that they had been reporting false information about one of the toll-free lines and that they were not in fact sure that they had complied with the specific requirements of the CAO. So all of the lines except that one line were in fact dissolved at the end of the CAO period. And what we were demanding of them is to actually show at the end of the extended period that they agreed to, we were demanding that they show compliance. We did discovery. We had them produce documents. They produced hundreds of thousands of pages of documents that we had to review. It was very time intensive. In that, with regard to that issue in specific, we never filed a defensive pleading. All of our time related to that issue was trying to verify that they had brought themselves into compliance. Interesting. So the fees that you think you're a prevailing party on with respect to this issue, you didn't actually do anything beyond reviewing to make sure that they were doing it correctly. So if I'm understanding the point, your view of this case is that docket 660 entered in what, 2004? 2007. Sorry, 2007, excuse me. So 20 years ago, roughly. Yes. Lasts in perpetuity, right? Paragraph 3 says forever. Until modified. And you can verify their compliance even when they're not doing anything wrong. But you can verify their compliance, make them produce the documents, review all of the hundreds of thousands of pages, and then charge the state a fee for that effort. For the most part, yes, Your Honor. And even in the absence of a violation of the CAO of any kind? It is under the consent decree and the corrective action orders, all of them, the exclusive responsibility for ensuring that the state gives the class everything that they have bargained for is given to plaintiff's counsel. There is not a special master in this case. There's no one, not an independent body out there who is verifying compliance. Our job is not to assume compliance. We have to verify compliance. And where we believe that there has not been compliance, it is our job under the consent decree and corrective action order to bring such noncompliance to the court's attention. And then it's up to the court whether to find compliance or not. But you don't need the noncompliance, right? This is a perfect illustration of why you wouldn't need that. You could just say, look, we had to review 100,000 pages of discovery. Give us our money. I mean, I'm sympathetic because I was in private practice. Reviewing 100,000 pages, that's time intensive. And it's obviously going to cost time. I just want to make sure I get the point of how you think 1983, 1988, the consent decree, the CAOs work from now until the end of time. Well, I would say there is definitely an end point to this litigation. A number of the CAOs have been dissolved. We believe the core corrective action orders remain in place. Specifically, the orders, the corrective action order provisions related to provider supply and the requirement to provide timely and complete checkups. Those since the beginning of the litigation have been at the core, and they remain in place. And the class deserves someone to advocate for their ability to receive benefit of what was agreed to. And when you say deserve, you mean pursuant to a bargain struck 30 years ago. You don't mean pursuant to anything that's in Title 42. I mean pursuant to the consent decree and pursuant to the corrective action orders. Yes, Your Honor. Tell me succinctly, if you can. I'll try. The judge, Judge Schroeder, wrestled with this baby. This is one of those lifetime cases, so to speak, and on and on and on. So just tell me succinctly. You're the appellant. Where and when he misapprehended the position you take here that you're on appeal? Well, I don't know. Was there a document? Was there an argument? I mean, where? Clearly understood the case, but I mean, just give me a bullet point of where within all of this, you know, he deviated from fully appreciating the position you're taking here with us. I think we fundamentally disagree with the district court about the meaning of the Frueh versus Traylor decision. Frueh versus Traylor found that we were prevailing parties, especially. Well, he can read an opinion. Yes, of course. But in. And we disagree often on, you know, maybe what a Supreme Court opinion. Sure. You know, says we're all reading the same language. But, you know, as jurors, you know, we try to follow it. But we can, say, have a different take.   Most of the reasoning of the court is in document 1972, which is not a final order. It basically ordered the parties to confer, and then the court issued a final word. But the legal reasoning was contained in 1972. Our understanding is that Frueh versus Traylor sent, remanded the case back to the court to consider reasonableness under the Hinsley opinion. Docket 1972 rejects application of Hinsley to post-decree work, and finds a conflict between Hinsley and the Delaware Valley opinion. It says Delaware Valley, not Hinsley, applies to fees in the post-decree context. We believe that Frueh versus Traylor mandated application of the Hinsley reasonableness standard, and that it requires, in determining what a reasonable fee is, looking at the overall success in the litigation as a whole, not the success on individual motions. Hinsley says that quite explicitly. And so while we- So essentially, you're asserting an error of law, misapprehending or misunderstanding his directives on the remand based on Frueh, right? That is what we are saying, Your Honor. All right. Lawyers lose all the time by ruling, said judges, given, definitionally. But it doesn't necessarily convert to reversible error, because you're not, you don't have a disagreement about the facts and all that, the consent decrees and so forth. Reduce to a simple, what is, articulate for me in a declarative sentence, what it is, the holding that you would want this- I see the light's red, don't worry about it, I got it. It's the only color it's going to change to. I got it, right here. Articulate for me in a straightforward declarative sentence, not argument, what is the holding that you would want this panel to come down with? We would want it remanded to the district court for a reconsideration of reasonableness, specifically applying the Hensley standard, which requires consideration of overall success in the case, which includes the consent decree, the 2007 corrective action order, Supreme Court opinion, all of it. So you want a reconsideration? I'm saying, what would we say? Remand, reconsider under Hensley, that's essentially what it is. And he says, what part of what I already said didn't you understand? I'm not trying to be facetious, I'm not trying to be facetious, but if we send something back, trial judges prefer we give them some instruction, some direction, whatever, because they don't want to do a do-over. And so, you follow what I'm saying? I'm not trying to be facetious, and that's why I'm asking you, what is it we would say? Reread the case, he read it, all right? So we send it back, he says, what part of that didn't? And again, I'm taking the time, because often we get cases here, and it is difficult to discern exactly what the relief the parties want from the panel, that if you were to prevail, what is it that we say? Would it be just a straight remand, with directions? If so, what would that be? But if you're telling me it's rereading through, and the reasonableness, and so forth, I hear that as your argument. I just wanted to make sure, as one judge, that I understood precisely what it is that you would want us to do. Yeah, well, again, the error is that we read the district court of having rejected Hensley, and this court's instruction to perform the Hensley reasonableness analysis. There is no such analysis in order below. So we think if the court gave that instruction to consider Hensley, and to look at overall success rather than specific success on a motion, that that would clarify a lot from the court. You're saying the court failed to do a reasonableness analysis? Yes, Your Honor. He denied some fees, and didn't he use the word unreasonable? He said unreasonable, unnecessary, and ultimately unsuccessful. Yes, Your Honor. So why do you think he didn't consider reasonableness? It was not something that was unreasonable. It was not the Hensley reasonableness analysis, which looks at overall success. Instead, he was saying it was unreasonable simply because it was unsuccessful, which contradicts the basic finding. It's essentially a finding of that we are not. You're saying his finding that it was unreasonable was based solely on his determination that it was unsuccessful? Yes. He says that, I believe, specifically. Yes, Your Honor. We see it as a challenge to this court's finding that we are a prevailing party for such efforts in Fruehers' trailer. And so a clarification from this court. But wasn't he making a finding about success? Wasn't he talking about specific motions that were filed? He was, Your Honor. So he didn't say you weren't successful in the overall litigation. He was talking about specific motions. But are you saying that the determination should have been based on your success in the overall litigation, these subsequent motions that you filed, successful or not? Motions that are specifically contemplated and provided for in the corrective action order, which all of these motions relate to the corrective action order are. Yes, we are saying those motions that Fruehers' trailer found are part of the relief we got for the class have to consider the entirety of the case in determining what the reasonable fee would be. But you can lose those motions in perpetuity and still get paid. A reasonable fee that takes into account our overall success. So just to put a really fine point on it, you don't have to file the motion at all, because you can just review the 100,000 pages and you get paid for that. And if you file the motion and you lose, you get paid for that because it was necessary to file the motion because it's contemplated by Fruehers' trailer 2017. Because we had a reasonable belief that there was a lack of compliance. Until the end of time. Until all of the litigation is resolved. That is until you choose to let them out from under the thumb of the class. With respect, Your Honor, I think the court has been pretty good about dissolving. Once all of the CAOs are dissolved and all of the provisions of the degree are dissolved, which we have no control over. Can you remind me how many of the dissolutions you've opposed? There's a lot, so I just can't remember. Of the 11, I'd have to count. I think we have opposed, and one of the dissolutions did not involve a CAO. It involves parts of the decree. I believe that there have been. When you come back up on me. When you come back up on me, Bo, you've saved your file. Sure, sure. You can determine what exactitude the response to. Okay, I'm sorry for it. Anyway, no, no, no worries. That's why we have oral arguments and get the answers, so we appreciate your candor, but you reserve your rebuttal time. Thank you, Your Honor. Thank you. Counsel, I don't want to butcher your name. Kimberly Gadula, Your Honor. Okay, thank you. On behalf of defendants, agencies of the state of Texas, good morning and may it please the court. Morning. Plaintiffs have been compensated for the success that they have achieved in the past. To be entitled to more compensation, plaintiffs must show, must prove, that they have achieved a degree of success. Since the corrective action orders were issued in 2007, the state has largely, almost entirely, achieved success in every motion that it has filed related to this case, where plaintiffs have largely achieved none. Specific to the motions that, where the fees that are at issue in this appeal arise from, the state achieved complete success and the plaintiffs achieved none. Counsel, what's the plan to dissolve this decree? Is there a plan? Yes, Your Honor. Over the course of the past several years, the state has been using the corrective action orders, attempting to reach an agreement during the conference period with plaintiffs to dissolve or terminate the CAOs. Where an agreement cannot be reached, they have filed 65 motions to vacate. And as I said, in those efforts, the state has largely been successful. For the six motions to vacate that are at issue in these fees, the state won all of them. One of those did go up on appeal to this court and it was affirmed. In the others, the plaintiffs chose not to appeal. So the plan is where no agreement can be reached to continue to bring these matters to the court and hopefully continue to prove that the state is in compliance or should otherwise be excused from the corrective action orders until we are left with none. Attorney's fees must be reasonable to be recoverable. And this creates a positive incentive for litigants. Under plaintiff's theory, if successes that were achieved at the beginning of this now 30-year-old case are enough to permit them to recover their fees going forward, regardless of whether those efforts are successful, that would create a negative incentive for this case and for others like it going forward, which is why the district court did not abuse its discretion when it refused to award the plaintiff's fees incurred on work that achieved no degree of success. This is not the first time that this fee issue has been before this court. We've been talking about the 2017 decision, the Fruvi trailer. In that decision, it was established that yes, plaintiffs are prevailing parties. They did achieve success in obtaining the consent decree and in obtaining the corrective action orders. However, this court reversed and remanded that particular case back to the district court because the district court had failed to conduct a reasonableness analysis, of which the most important factor is degree of success. In this case that is now before this court, the district court did conduct a reasonableness analysis. The court looked at the work that plaintiff had done and determined that they had achieved no degree of success and therefore those fees were unreasonable and should not be awarded. Specifically, and this has come up in some of the questioning, I did want to point out that in all but one of these six motions to vacate that are at issue, these were motions filed by the state where after attempting to reach an agreement with the plaintiffs, the state went to the court to say, we believe that we should be released from this corrective action order. Only in one instance did plaintiff affirmatively file their own motion to enforce. That was with regards to the prescription and non-prescription medication corrective action order. In that case, the state's motion to vacate was granted. The plaintiff's motion to enforce was denied and that was upheld on appeal. In no other instance has the plaintiff attempted to enforce or to claim that the state is in any way not in compliance with a corrective action order other than to oppose the relief that the state seeks. And when a court finds that the state's motion is well-founded, then the plaintiffs have not achieved a degree of success and awarding fees for that work is unreasonable. If the district court is required to consider the original success that plaintiffs obtained in this case in its reasonableness inquiry, it essentially will result in plaintiffs being entitled to recover fees in perpetuity regardless of the success that they have achieved. That original success has already been compensated. If plaintiffs want to recover more fees in this case, they must be able to satisfy a reasonableness inquiry that shows that they are obtaining a degree of success. They are obtaining a benefit for the class. The district court correctly determined in regards to four specific motion series that are at issue here that they had not achieved that degree of success. However, in respect to two specific motion series, the district court did abuse its discretion in awarding fees because again, plaintiffs achieved no success and the state received all of the relief that they requested. Those specific motion series are the motion to vacate miscellaneous paragraphs within the consent decree and a motion to vacate the remaining line in the toll-free number corrective action order. In both of those cases, the parties used the conference period that is contemplated by the CAOs to try to reach an agreement. No agreement could be reached. The state filed a 60B-5 motion to vacate which plaintiffs opposed. The state was required to provide discovery, plaintiffs conducted discovery, depositions and through all of that, plaintiffs never filed a response to the state's motion. Instead, it was only after the district court issued an order that said, you must either withdraw your opposition or file a response by X date that the plaintiffs decided to withdraw their opposition and the court entered orders terminating those particular consent decree paragraphs and the remaining portion of the toll-free number CAO. However, because the result of, because the district court found that plaintiffs were conferring and ultimately reached an agreement to terminate those provisions, it awarded plaintiffs fees for that work. That because it did not conduct a reasonableness inquiry that looked at the degree of success obtained, it was an abuse of discretion to award those fees. Those motions should have been treated exactly the same as the other motions to vacate that went through briefing and obtained a ruling from the court. In one case that was upheld by this court and awarded no fees because it is not reasonable to do work that achieves no success, that achieves no benefit for the class. Your honors, unless there are further questions that I can answer for you, I am happy to return my time back to the court. I'm happy to take it. All right. Thank you, ma'am. Thank you, your honors. We appreciate the argument and of course we have all the briefing. All right, Mr. Gregg, you're back up for rebuttal, sir. I thought I'd start by answering your questions, Dr. Oldham. You asked how many we've opposed and by my count, and I may have missed one or two, I don't think I have, but I think there have been nine 60B5 motions and we have not opposed two of those. Thank you. I would also like to correct the record on one thing that the opposing counsel just said. We have in fact, I believe, filed four enforcement motions related to the CAOs, not the one that was just claimed. It's a minor point. The reason that we believe we are entitled to fees regardless of success is that Prue versus Traylor found that the motion practice, the obtaining of a court finding of whether further action is needed on the corrective action order is part of the relief that we obtained for the class in the corrective action order itself. The corrective, and it is part of the enforcement mechanism that the corrective action created. That is why, even if we're not successful, we are prevailing parties for those efforts because the efforts merge with the success of the 2007 corrective action order itself. If we didn't pursue those, if we treated seeking a court determination of whether, in fact, there has been compliance, where we think there's reason to think there isn't compliance, we would be failing the class. We would not be upholding their hard won concessions that defendants agreed to. Prue versus Traylor says this is not a case where defendants can claim their surprise that these efforts are taking place. And most of these efforts weren't recent. We are talking about 10 years of fees here. When I came into this case in 2013, we were facing multiple simultaneous 60 B-5 motions that we had to determine whether we were going to oppose, respond to, how were we going to respond to them, did we need discovery before we could figure all that stuff out. And most of these things have been sitting there for a decade, and there are still cases that have been fully briefed for a decade that have yet to be resolved. And the court has denied us fees both for things we've lost on and things that just haven't been decided yet, even though it's been a decade or more. Defendants would have us treat the decision of whether to pursue the relief that the class obtained in the corrective action as some sort of case where we're taking the risk of losing rather than having to think, what are the rights of the class in this situation? Have we gotten the full benefit that they're entitled to? And when we were making these decisions, we- What's the difference between the fees that were awarded and the fees you claim should have been? Well, it depends, I mean, there's a dispute over the hourly rates and things like that, so it sort of depends on that decision. But it is suffice it to say in the millions of dollars. This is a complicated, time-intensive case. The docket sheet alone is hundreds of pages long, and we have to be responsible for knowledge of all of that to some degree or another. And when we were making the decision whether to oppose or not, for the most part, what we had was the court's orders approving the consent decree and the corrective action orders, the court's orders finding that the defendants had not complied, and applying those standards to the evidence that the defendants presented at that time, it was completely reasonable for us to oppose their motions to dissolve those provisions. Now, it turned out that we were not successful, ultimately, and that the standards that had been applied previously by the then-deceased judge were not applied going forward. I think that's my time. All right, thank you, Mr. Gregg. We appreciate your argument, and Counsel Oppsitt, we appreciate your argument. It's reams and reams and reams and reams of paper, but we've gone through a lot of it, and we'll get it decided. Thank you. Okay, thank you, Your Honor.